Dora J. McComb, as Administratrix of the Estate of Albert E. McComb, Deceased, Respondent, *v.* Samuel J. Boardman and Others, Appellants.

Third Department, December 28, 1921.

Motor vehicles — action for damages for death of plaintiff's intestate as result of being thrown from motorcycle and under defendant's automobile driven by his daughter — automobile going slowly and about to turn in road — evidence that driver gave no warning and that from automobile there was clear view of 400 feet toward direction from which decedent was coming — decedent had period of three or four seconds in which to avert danger — defendant liable for negligence of daughter — duty of driver turning about in highway to regard safety of others — contributory negligence was for jury.

In an action for damages for the death of plaintiff's intestate caused by a collision with defendant's automobile driven by his daughter with his consent though he was not present in the car, it appeared that the decedent was thrown from his motorcycle and under the car while proceeding at the rate of thirty miles an hour or less; that at the instant of the collision the automobile was going slowly and about to stop for the purpose of returning in the direction from whence it came; that no signal was given of the intention to turn; that from the automobile there was a clear view for more than four hundred feet toward the west, the direction from which the decedent was coming, and that the period in which the decedent had to decide as to what he must do to avert the danger was three or four seconds.

*Held*, on all the evidence, that the defendant is liable for the negligence of his daughter in driving the automobile which resulted in the collision.

While the driver had the right to turn the automobile about in the highway, she was required to be observant and to have due regard for the safety of others using the highway, and particularly as she crossed the road.

The question as to contributory negligence was for the jury and it was justified in finding that, as soon as the decedent realized the danger, he attempted to stop his motorcycle, and in doing so was thrown from his seat and under the car.

APPEAL by the defendants, Samuel J. Boardman and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Broome on the 6th day of May, 1920, upon the verdict of a jury for $1,500, and also from an order entered in said clerk's office on the 1st day of June, 1920, denying defendants' motion for a new trial made upon the minutes.

*John Marcy, Jr.* [*Harvey D. Hinman* of counsel], for the appellants.

*Charles P. Coffey* [*Riley H. Heath* of counsel], for the respondent.

VAN KIRK, J.:

Plaintiff's intestate, while riding a motorcycle, was killed by a collision with an automobile which was the property of the defendants Samuel J. Boardman and Jennie Boardman, his wife. The defendant Cora Boardman, the daughter of Samuel J. and Jennie Boardman, was accustomed to drive this automobile and had her father's consent to use the car at any time to drive with any members of the family and their friends. On Sunday afternoon, May 4, 1919, about three P. M., Cora Boardman, with her mother and two friends, was driving in this automobile westerly from Binghamton on the highway, which at the point in question, identified as the "Gray driveway," runs east and west and continues westerly from this point in a straight course about 400 feet, where it gradually curves northerly. The surface of the highway rises slightly for a distance of about 300 feet, from which point it declines slightly, but a party in an automobile opposite the Gray driveway could see a person on a motorcycle or in another automobile to the west more than 400 feet, and of course could then be seen by such person. A shower was

coming up from the west and the party in the automobile decided to return to Binghamton. The automobile was turned from its course on the right-hand side of the macadam going west to the left across the highway, to enter the Gray driveway, in order to turn about. The deceased, going east on his right-hand side of the macadam, collided with the car and died the next morning from the injuries received.

The plaintiff called but one eye witness of the accident, Mrs. Price, who lived on the northerly side of the highway nearly opposite the entrance to the Gray driveway. She was looking out of the front window, which is about sixty feet from the highway. As she looked toward the highway the automobile and the motorcycle were at the same instant in her field of vision. The automobile was in the act of turning; it was still on the right-hand side of the road, with the front of the car about the center of the macadam. The motorcycle she estimated at that instant was about twenty feet from the automobile. The automobile was going slowly. The deceased was riding with head up, face forward, and was twisting or turning the motorcycle " this way and that." The motorcycle was not then " chugging; " and the crash quickly occurred. At the time the crash occurred, the front wheels of the automobile had gotten to the edge, or just beyond the edge, of the macadam, while its rear end was near the center of the macadam and the automobile nearly straight across it. As it appeared to her, the motorcycle struck near the front end of the automobile and the deceased was thrown under it. The automobile was moving forward at the time of the crash, but stopped almost instantly. The deceased, whose body had passed under the running board, between the front and hind wheels, was not run over. She saw the body taken from under the automobile, which then " was a little farther up towards the driveway, the front wheels were up in the driveway." The witness heard no horn or signal from either vehicle and saw no signal by either party.

Witnesses for the defendant testified that the deceased was thrown from his cycle before it struck the car. The markings on the motorcycle are evidence consistent with this testimony; and, since his body went under the running board with such force that his skull and bones of his face were broken and the

tierods under the automobile bent by the contact, it cannot be concluded that he was thrown after the collision. Had he been thrown by the collision, his body momentum would have thrown him from his seat into or against the car. The markings upon his head and under the car show that his body was thrown with considerable force; that the speed of the motorcycle, at the time he left his seat, was fast. But this fact cannot affect the result, as we view the case.

This was a two-cylinder motorcycle and the jury was justified in finding that one cylinder was entirely disabled, and that the cycle, so disabled, could not attain a speed higher than thirty miles an hour. The testimony on behalf of the defendants is that, as the automobile approached the Gray driveway, and up to the time it began to make the turn, it was going about fifteen miles per hour, and thereafter gradually slowed down, still, however, running in " high " and without either brake on; at the instant of the collision it was going slowly and was about to stop.

The appellants maintain that the verdict was so strongly against the weight of evidence that it should be set aside; also that the deceased was guilty of contributory negligence as a matter of law.

The driver of the automobile had the right to turn about in the highway for the purpose of returning to Binghamton. The location was a rural district, not thickly settled. She was, however, required, in directing the movements of the car, to be observant and to have due regard for the safety of others using the highway, and particularly, as she crossed the road, of those passing east. The deceased had the lawful right to ride his motorcycle along the macadam highway at thirty miles an hour or less, giving due attention to keeping his motorcycle under reasonable control in that location and using due care to avoid a collision with others in the highway. It was the duty of both parties to be as watchful as they reasonably could to discover another passing in the highway and avoid a collision with such other.

While going at fifteen miles an hour, the automobile was going twenty-two feet per second. Cora Boardman says that she did not turn until she was nearly opposite the Gray driveway. The macadam was sixteen feet wide; there was

a dirt shoulder, we are not informed of its width, outside of the macadam and before the driveway proper was reached, but usually this shoulder is from two to three feet. We must realize that an automobile is nearly six feet wide over all and that, when passing along a macadam road on its right, it occupies nearly half the macadam. Giving due allowance to the curve in turning, the distance the automobile went to reach the driveway, after beginning the turn, would not much exceed forty feet, if any. The jury was justified in concluding that the time between the beginning of the turn and the instant of the collision, allowing for slowing speed, did not exceed three or four seconds. The motorcycle, if running at its maximum speed, in its injured condition, was running at the rate of forty-four feet per second. From the automobile there was a clear and practically straight view for more than four hundred feet toward the west. If the car took four seconds from the point of beginning its turn to the point where the collision happened, the deceased was within two hundred feet of the automobile at the time the turning began. If he was going less than thirty miles an hour, this distance was less. The jury was justified in finding that defendants' witnesses were mistaken in saying that they looked toward the west at the time the car began to turn and that the deceased was not then in sight, and that there was negligence upon the part of Cora Boardman, on account of which the injuries were suffered.

No signal was given from the defendants' car of the intention to turn or change its course. The first warning to the deceased of such intention was when the car itself was turned to the left sufficiently to indicate that it was about to cross the highway to the left side. The deceased, seeing a car coming from the east upon its side of the road, was not required to anticipate that he would collide with it. Until the automobile changed its course sufficiently to indicate that it was about to intercept his safe passage on his right-hand side of the road, he had the right to proceed; and, when he saw the car begin the turn, it would have been very difficult (accepting the facts as the jury was justified in finding them) for him on the instant to gauge the distance, calculate the relative speeds of the vehicles and determine what action he should take. The

period in which he must decide was three or four seconds. The jury was justified in finding that, as soon as he realized the danger, he attempted to stop his motorcycle, and, in doing so, was thrown from his seat and under the car. The question of contributory negligence was for the jury.

Under the testimony of Cora Boardman and the facts of the case, the jury was justified in holding the defendant Samuel J. Boardman liable, though not present in the car.

The judgment should, therefore, be affirmed, with costs.

Present — JOHN M. KELLOGG, P. J., WOODWARD, COCHRANE, H. T. KELLOGG and VAN KIRK, JJ.

Judgment and order unanimously affirmed, with costs.